A. G. WHITNEY v. HENRY C. BAILEY.
SAME v. VERNON O. BAILEY.[1]

January 9, 1903.

Nos. 13,318, 13,319—(180, 181).

**Notice of Tax Sale.**

Where, in proceedings under Laws 1881, c. 135,—the forfeited tax sale law of 1881,—the sale actually took place in the auditor's office in the courthouse, the notice of such sale, in which the, place designated was "at the courthouse," was a sufficient compliance, as to the place of sale, with the requirements of section 4; and a certificate of sale in which it was recited that the sale was "at the courthouse" sufficiently conforms, in respect to place, to the provisions of section 5.

**Adjournment of Sale to Another Room.**

The sale in question was formally and properly opened in a small room on the ground floor of the courthouse, ordinarily used by the auditor as his office. So many people were present that this room was

---

[1] Reported in 92 N. W. 974.

filled and crowded, as well as the hall leading to it. A large number of prospective bidders were unable to get into the office or within hearing, and for these reasons were absolutely prevented from taking part in the bidding. After a few sales, the auditor announced that, to accommodate the bidders, and for the purposes of the sale, his office would be moved temporarily to the courtroom upstairs. Those present thereupon repaired to the courtroom, and all subsequent sales were made therein. *Held*, that the courtroom became the auditor's office for the time being, and for the purposes of the sale, and that the law as to the place of sale was properly observed.

### Publication of Forfeited Tax List.

*Held*, further, that where the delinquent list for the current year was published in part in a newspaper, and in part—the concluding portion— in a supplement to said paper, the forfeited list, which followed the current list, and was wholly in the supplement, was legally published.

Separate actions in the district court for Sherburne county; that against defendant Henry C. Bailey being in ejectment; that against defendant Vernon O. Bailey being to determine his adverse claim to vacant and unoccupied land. The cases were tried together before Giddings, J., who found in favor of defendant in each case. From the separate judgments entered pursuant to the findings, plaintiffs respectively appealed. Judgment affirmed in both cases.

*Stewart & Brower*, for appellant.

*Charles S. Wheaton* and *S. & O. Kipp*, for respondents.

COLLINS, J.

These actions—one in ejectment, the other to determine an adverse claim—were tried together by the court without a jury, and in each case judgment was ordered for defendants.

The right of defendants to the land in question—adjoining governmental subdivisions or tracts—depends upon the validity of a tax sale and a certificate thereunder made to their grantor in attempted conformity with the provisions of Laws 1881, c. 135 (the so-called forfeited tax sale law of 1881).

Three reasons are stated by the plaintiff (admittedly the owner of the land, except for these tax proceedings) why this certificate is void: First, that the notice of the tax judgment sale did not correctly specify the place of sale fixed by section 4 of chapter 135;

second, that the sale did not occur at the place so fixed (that is, at the auditor's office); third, that the delinquent tax list mentioned in section 1 was published entirely in a newspaper supplement, following the delinquent list for the current year, part of which was in the main paper. Two of these reasons are based upon the requirements of section 4, supra, which, in part, reads as follows:

"The sale herein provided for shall be made by the county auditor at his office."

In this particular case the notice of sale stated that it would be made "at the court house," nothing being said as to the auditor's office, and the certificate issued by the auditor (section 5) recited that the sale was at the court house.

The facts concerning the sale seem to be agreed upon as follows: At the proper time it was formally and properly opened in the auditor's office in the court house,—a very small room, with so many people present that the room was filled and crowded, and also the hall leading to it. A large number of proposed bidders were unable to get into the office or within hearing, and for that reason were absolutely prevented from taking part in the bidding. After a few sales had been made, this fact was called to the attention of the auditor; and he thereupon publicly announced that, if satisfied that the sale would not be invalidated, he would move upstairs, into the courtroom, for the purpose of continuing it. Several lawyers, including the county attorney, who were present, advised him that, under the exceptional circumstances, such an act would not invalidate the proceedings, and thereupon the auditor announced that his office would be moved to the courtroom for the purposes of the sale. All repaired to the courtroom, and thereafter all sales, including that of the tracts of land in question, were made in the courtroom, which, as a matter of fact, became the auditor's office for the time being and for the purposes of the sale. There was no claim that anybody was prejudiced by this change, or by the fact that the auditor's office was temporarily removed to a more commodious room in the same building.

1. It is contended that the notice of tax judgment sale was

absolutely invalid, because it stated that it would be held at the courthouse, instead of at the auditor's office. The notice was not wholly and absolutely incorrect, because, as the presumption must always be that the auditor's office is in the courthouse, and such was the fact in this instance, the notice was right to a certain extent, although it did not specify the particular office or room in the courthouse in which the sale was to be held. As counsel urge, it has repeatedly been held that a tax sale at any other place than that specified by law is absolutely void, but none of the cases cited by counsel go to the extent of determining that a notice is insufficient and invalid simply because it failed to be exactly correct and absolutely explicit as to place. For illustration, in one of these cases no place of sale whatsoever was mentioned in the notice; in another, the place was stated to be at the front door of the courthouse, when the law required that it should be at the treasurer's office; in another, the statute provided the sale should be made at the courthouse door, but the sale was made elsewhere, the place not being stated in the opinion. In the Missouri cases cited, the statute required the sales to be made before the courthouse door; that is, outside of the building. The court held the sales to be void because they were made inside; one principal reason being, said the court, that the bidders would naturally wait before the door (that is, outside the courthouse) for the sale to commence. None of these cases are in point, and we think, in the absence of any showing whatsoever that any one was misled by this notice, taking into consideration the presumption and the fact that the auditor's office was in the courthouse, that the notice was sufficient. In this connection, attention is called to the fact that, in the form of certificate prescribed (section 5) for the auditor's guidance, his office, as the place of sale, is not mentioned.

2. It follows inevitably that, if the notice of the sale was sufficient, the certificate, which followed it as to the place of sale, was valid. It was unqualifiedly true, because the sale was at the courthouse. And so the inquiry is, was the sale or the certificate affected by the fact that the sale was not downstairs, in the small room ordinarily used by the auditor as his office, but took

place in a more convenient room, occupied temporarily by the auditor as an office for the purpose of making the sale? We think not, in the absence of any evidence tending to show prejudice. For the time being, the auditor's office had been removed, and was in the courtroom.

3. Section 1 of chapter 135, supra, directs the auditor of each county to make out and append to the list of delinquent taxes for the year 1881 a list of all taxes upon real estate in the county which appear to have become delinquent in the year 1879, or any prior year or years, and have not been satisfied by payment, redemption, or sale of the real estate to actual purchasers. In the case at bar the list followed and was appended to the delinquent list for 1881, and was so published. The law governing the regular delinquent list required that its publication should be made in a designated newspaper, or partly in such paper and partly in a supplement issued therewith. In this particular case the regular list commenced in the newspaper, but it was concluded in the supplement, and then followed the forfeited list; all thereof being in the supplement.

It is claimed that, because it would be illegal to publish all of the regular list in a supplement, it must be equally as illegal to publish all of the forfeited list in a supplement. On this point, counsel call attention to McQuade v. Jaffray, 47 Minn. 326, 50 N. W. 233, in which it was held that it was unnecessary to have the publication of the forfeited 1881 list in immediate connection with, or immediately following, the current delinquent list; but that case has no bearing upon the question now being discussed. When we take into consideration the fact that the list referred to in section 1 is to be appended to the delinquent list for the current year (that is, follow it), and realize that it should be published in the same order (that is, following in immediate or close connection), we cannot hold that if a portion of the delinquent list be published in a supplement, as it may be, the forfeited list must be in part published in the paper, and a part only in a supplement. Such a publication could not be made, and one list follow the other. We think it obvious that an interested party, looking for the published list under the law of 1881, would naturally expect it

to follow immediately, or in fairly close connection with, the concluding portion of the list of delinquent taxes for the current year, whether that concluding part was in the paper or in a supplement.

This disposes of both cases, and in each the judgment is affirmed.